

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00273-CV

_____

IN THE INTEREST OF R.H. AND R.C., CHILDREN

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-604900-16

Before Gabriel, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant R.D. appeals the termination of his parental rights to R.H. (Ryan), and Appellant W.C. appeals the termination of his parental rights to R.C. (Roman).[1] In two points, W.C. contends that the trial court erred by denying his motion to extend the dismissal deadline found in Texas Family Code Section 263.401(a) and that the evidence is factually insufficient to support the trial court's finding that termination was in Roman's best interest. *See* Tex. Fam. Code Ann. § 263.401(a). R.D.'s appointed appellate counsel has filed a brief under *Anders v. California*, 386 U.S. 738, 744–45 (1967), asserting that R.D.'s appeal is frivolous. Because we overrule W.C.'s two points and because, after carefully reviewing the record, we agree with R.D.'s counsel that R.D.'s appeal is frivolous, we affirm the trial court's termination order.

## I. BACKGROUND

Ryan and Roman are half-brothers—they share a mother, L.H. (Mother).[2] Following his June 2018 birth, Roman's meconium tested positive for

---

[1]We use aliases to refer to the children associated with this appeal and initials to refer to the appellants. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[2]The trial court terminated Mother's parental rights to Ryan and Roman after she signed a voluntary relinquishment of those rights. Mother does not appeal.

methamphetamine.[3]    The Department of Family and Protective Services (the Department) stepped in, and after some initial difficulty locating Mother and Roman, the Department tracked them to a motel in Fort Worth, where they were residing with W.C. and Ryan.  The Department removed Ryan and Roman on July 9, 2018, and filed suit to terminate the parental rights of Mother and R.D. to Ryan and Mother and W.C. to Roman.

Following removal, Meagan McDonald, a caseworker for Child Protective Services, established a service plan for W.C.  W.C. was required to engage in random drug testing, drug treatment, and individual counseling.  In addition, he was ordered to complete a psychosocial assessment and to refrain from criminal activity. McDonald testified that she met with W.C. on several occasions to discuss his progress in completing the service plan.  She testified that she met W.C. on August 22, 2018, and he admitted to using methamphetamine seven days prior.  That concerned McDonald because of the short timeline to achieve family reunification and because it demonstrated that W.C. was not getting his life in order.  McDonald met with W.C. again on October 24, 2018, and he told her that he had not made any progress in completing the service plan.  That same day, McDonald asked W.C. to take a drug test, and she informed him that his refusal to do so would be considered as a presumptively positive test.  Despite that warning, W.C. failed to take the drug

----

[3]Ryan was born in July 2016.  Ryan's meconium also tested positive for methamphetamine at his birth.

3

test.[4]  At the termination hearing, McDonald testified that W.C. did not complete a drug assessment, did not start individual counseling, did not complete a psychosocial assessment, and did not successfully complete any items on the service plan.

The Department also presented evidence of W.C.'s lengthy criminal history—criminal history occurring both before and after Roman's removal.  Prior to Roman's removal, W.C. had been convicted of the following felonies: (1) first-degree felony possession with intent to deliver a controlled substance, namely cocaine, for an offense committed on October 5, 1996; (2) first-degree felony delivery of a controlled substance, namely cocaine, for an offense committed on October 5, 1996; (3) second-degree felony burglary of a habitation for an offense committed on December 21, 2005; and (4) state jail felony possession of a controlled substance of less than one gram, namely methamphetamine, for an offense committed on October 20, 2015. The evidence also showed that W.C. committed and was convicted of the following felonies after Roman's removal: (1) second-degree felony burglary of a building for an offense committed on September 11, 2018; (2) a second count of second-degree felony burglary of a building for an offense also committed on September 11, 2018; (3) second-degree felony theft for an offense committed on November 29, 2018; and

---

[4]W.C. testified that he attempted to take the drug test McDonald requested on October 24, 2018, but the drug-testing facility was closed when he arrived, despite his arrival at the requested time.  W.C. testified that this occurred on other occasions as well—he would allegedly arrive at the drug-testing facility at the requested time, but the drug-testing facility would be closed.

(4) second-degree felony theft for an offense committed on December 3, 2018. W.C. pleaded guilty to the felonies committed after Roman's removal, and on April 16, 2019, the trial court sentenced him to three years' confinement, with the sentences to run concurrently.[5]

The Department also put on evidence of domestic violence between W.C. and Mother. McDonald testified that at an initial court hearing in the case, she noticed that Mother had a black eye and bruising on her neck. Mother told McDonald that those injuries were caused by W.C. McDonald testified that she did not have any evidence that W.C. had physically abused Ryan or Roman but that domestic violence between W.C. and Mother placed them in danger.

On the morning of the termination hearing, W.C. filed a motion to extend the dismissal deadline. The trial court denied W.C.'s motion. The trial court later signed an order of termination, terminating Mother and R.D.'s parental rights to Ryan, terminating Mother and W.C.'s parental rights to Roman, and appointing the Department as Ryan and Roman's permanent managing conservator.

## II. W.C.'S APPEAL OF THE DENIAL OF HIS MOTION TO EXTEND THE DISMISSAL DEADLINE

In his first point, W.C. appeals the trial court's denial of his motion to extend the dismissal deadline found in Texas Family Code Section 263.401(a). *See* Tex. Fam. Code Ann. § 263.401(a).

---

[5]W.C. was incarcerated at the time of the termination hearing.

We review a trial court's decision to grant or deny an extension of the dismissal deadline under the abuse of discretion standard. *In re D.W.*, 249 S.W.3d 625, 647 (Tex. App.—Fort Worth 2008, pet. denied). Pursuant to Section 263.401(a), a termination suit filed by the Department is automatically dismissed on the first Monday after the first anniversary of the date a trial court renders a temporary order appointing the Department as temporary managing conservator if the trial court has neither commenced the trial on the merits nor granted an extension. Tex. Fam. Code Ann. § 263.401(a). The trial court may grant an extension of up to 180 days if it finds that "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the [D]epartment and that continuing the appointment of the [D]epartment as temporary managing conservator is in the best interest of the child." *Id.* § 263.401(b). The focus is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the temporary custody of the Department, and whether continuing such is in the best interest of the child. *Id.*

Here, on the morning of the termination hearing, W.C. filed a motion to extend the dismissal deadline. The written motion contained no argument, let alone evidence, that extraordinary circumstances necessitated an extension of the dismissal deadline. Rather, W.C.'s motion simply stated:

> The circumstances of the case and the needs of the children are such that it would not be in the best interest of the Children to dismiss the suit on that date or to render final orders. An extension of the dismissal date of not longer than 180 days is in the best interest of the Children.

6

Just as the termination hearing began, W.C.'s counsel brought the motion to the trial court's attention, and the trial court took up the motion for consideration. Again, W.C. did not offer any evidence of extraordinary circumstances to justify an extension of the dismissal deadline; rather, W.C.'s counsel simply made the following argument:

> Your Honor, my client is [W.C.]. He is -- he is currently in the Texas Department of Criminal Justice prison in Abilene, I believe. [W.C.] expects to get out of prison in early September, and he -- he has convinced me that he has changed his life, and he would like to tell you about it.[6]

The trial court denied W.C.'s motion.

Based on this record, it was entirely within the trial court's discretion to determine that W.C. failed to present any evidence of extraordinary circumstances that would necessitate an extension of the dismissal deadline. *See D.W.*, 249 S.W.3d at 648 (holding that because mother presented no evidence when she presented her motion to extend the dismissal deadline, the trial court did not abuse its discretion by denying her motion); *In re A.S.J.*, No. 04-06-00051-CV, 2006 WL 1896335, at *2 (Tex. App.—San Antonio July 12, 2006, no pet.) (mem. op.) (holding trial court did not abuse its discretion by denying parents' motion to extend the dismissal deadline where parents "failed to provide any evidence of an extraordinary circumstance that would

---

[6]W.C. was not deprived of the opportunity to tell the trial court about how he claimed he had changed his life. He was present and testified at the final termination hearing.

7

warrant an extension of time"). Thus, we hold that the trial court did not abuse its discretion by denying W.C.'s motion to extend the dismissal deadline.[7]

We overrule W.C.'s first point.

## III. W.C.'S APPEAL OF THE TRIAL COURT'S BEST-INTEREST FINDING

In his second point, W.C. argues the evidence was factually insufficient to support the trial court's finding that the termination of his parental rights was in Roman's best interest.

### A. STANDARD OF REVIEW

We must perform "an exacting review of the entire record" in determining the factual sufficiency of the evidence supporting the trial court's best-interest finding. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). Nevertheless, we give due deference to the finding and do not supplant it with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We review the whole record to decide whether a fact-finder could reasonably form a firm conviction or belief that the termination of W.C. and Roman's parent-child relationship would be in Roman's best interest. Tex. Fam. Code Ann. § 161.001(b)(2); *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If a fact-finder reasonably

---

[7]We note that the prayer of the motion to extend the dismissal deadline contained a one-sentence request that the trial court set a new trial date. To the extent that such sentence constitutes a motion for continuance, the trial court was within its discretion to deny the motion because it was not supported by an affidavit. *See* Tex. R. Civ. P. 251 (requiring a motion for continuance to be supported by affidavit).

could form such a firm conviction or belief, then the evidence is factually sufficient. *C.H.*, 89 S.W.3d at 18–19.

## B. APPLICABLE LAW

Although we generally presume that keeping a child with a parent is in the child's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the child's well-being, safety, and development, *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Evidence probative of a child's best interest may be the same evidence that is probative of a conduct ground. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *C.H.*, 89 S.W.3d at 28; *see* Tex. Fam. Code Ann. § 161.001(b)(1). We also consider the evidence in light of nonexclusive factors that the trier of fact may apply in determining the child's best interest:

(A)   the child's desires;

(B)   the child's emotional and physical needs, now and in the future;

(C)   the emotional and physical danger to the child now and in the future;

(D)   the parental abilities of the individuals seeking custody;

(E)   the programs available to assist these individuals to promote the child's best interest;

(F)   the plans for the child by these individuals or by the agency seeking custody;

(G)   the stability of the home or proposed placement;

(H)   the parent's acts or omissions indicating that the existing parent-child relationship is not a proper one; and

9

(I)     any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors" (footnote omitted)); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012). These factors are not exhaustive, and some listed factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the child's best interest. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

## C. BEST-INTEREST ANALYSIS

With regard to Roman's desires, the record reflects that Roman was one year old at the time of the termination hearing and did not testify. "When children are too young to express their desires, the factfinder may consider whether the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with the parent." *In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The record reflects that Roman and Ryan are with the same foster family and that both are doing "extremely well." The foster family desires to adopt Roman and Ryan should they become eligible for adoption. The record also reflects that Roman was removed from W.C. when Roman was three weeks old. Due to his incarceration, W.C. was unable to visit Roman in the six to seven months prior

10

to the termination hearing. During that six-to-seven-month period, W.C. sent no cards or messages to McDonald to forward to Roman. The trial court was entitled to find that this factor weighed in favor of terminating W.C.'s parental rights to Roman.

With regard to Roman's emotional and physical needs now and in the future, the record reflects that his basic needs, including food, clothing, shelter, medical care, and supervision, were being met with his foster family and that Roman was thriving. Roman had low muscle tone and was in need of, and while with his foster family had been receiving, Early Childhood Intervention services to assist in his physical development. As a result, Roman was making progress in meeting his physical milestones. The record reflects that W.C. was incarcerated at the time of the termination hearing, had not had any contact with Roman in the six to seven months prior to the termination hearing, and had not been meeting Roman's emotional and physical needs. The trial court was entitled to find that this factor weighed in favor of terminating W.C.'s parental rights to Roman.

With regard to the emotional and physical danger to Roman now and in the future, the record reflects that W.C. has a history of methamphetamine use, including use after Roman's removal. Michael Jauss, a special investigator for the Department, testified that children are endangered when their parents use methamphetamine while the children are in their possession. The record also reflects that W.C. caused Mother to sustain a black eye and bruising to her neck. McDonald testified that domestic violence between W.C. and Mother placed Roman in danger. The record also reflects

11

that W.C. has an extensive criminal history—both prior to and after Roman's removal. McDonald testified that W.C.'s criminal activities placed Roman in danger. McDonald also testified that W.C. knew that Mother was using methamphetamine but allowed Roman to remain with Mother prior to removal. McDonald testified that allowing a child to remain with another person who is actively using methamphetamine presents a danger to the child. The trial court was entitled to find that this factor weighed in favor of terminating W.C.'s parental rights to Roman.

With regard to the parental abilities of W.C., the record reflects that W.C. had not parented Roman except for the first three weeks of his life. The record further reflects that W.C. continued to use methamphetamine and to engage in criminal activities following Roman's removal despite knowing that he needed to abstain from illegal drugs and from criminal activity in order for Roman to be placed with him. W.C.'s criminal activity continued two months after his son was removed by the Department. W.C. was indicted for two burglary-of-a-building cases, both of which were alleged to have occurred on September 11, 2018. He was also indicted for two felony theft cases—one alleged to have occurred on November 29, 2018, and the other on December 3, 2018. At trial, W.C. testified he committed one crime but pled guilty to the others as part of a plea bargain deal even though he was not guilty in all four cases. Then W.C. explained to the court that once he was transferred to his unit at the Texas Department of Criminal Justice (TDCJ), he began attending self-improvement classes and programs. While W.C.'s efforts are commendable, they

12

reflect only four weeks in a forty-three-year lifetime. The trial court could have inferred from W.C.'s past history of instability, criminal conduct, and drug use that W.C. did not have the ability to meet Roman's physical and emotional needs in the future. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App. —Houston [14th Dist.] 2014, no pet.). The trial court is not bound to accept the truth or accuracy of a parent's testimony of future intentions. *D.F. v. State*, 525 S.W.2d 933, 939–40 (Tex. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). A fact-finder may measure a parent's future conduct by his past conduct and determine that it is in a child's best interest to terminate his parental rights. *In re E.M.*, 494 S.W.3d 209, 226 (Tex. App.—Waco 2015, pet. denied). The trial court was entitled to find that this factor weighed in favor of terminating W.C.'s parental rights to Roman.

With regard to the programs available to assist W.C. in promoting Roman's best interest, the record reflects that W.C. did not successfully complete any items on his service plan. He did not complete a drug assessment, did not start individual counseling, did not complete a psychosocial assessment, and did not refrain from engaging in criminal activities. However, W.C. did take advantage of several offered programs once he reached his TDCJ prison unit. W.C. estimated that in the month since he had arrived, he had spent fifteen to sixteen hours a week on self-improvement classes and programs, including programs to assist with his narcotics addiction and programs to assist with his parenting skills. Despite W.C.'s attempts to change his life and comply with his service plan in the month prior to the termination

13

hearing, the trial court was entitled to find that this factor weighed in favor of terminating W.C.'s parental rights to Roman.

With regard to the plan for Roman by the individuals seeking custody, W.C. estimated that he would be paroled in September—two months after the termination hearing. He testified that he would be able to get his old job back with the cable company and that his mother had arranged housing for him with a landlord in exchange for W.C.'s upkeep of the house and other properties. W.C. testified that he did not want to be with Mother but that he wished to take care of Roman and Ryan on his own. The Department's plan was for Roman to be adopted by the foster family that had been caring for Roman and Ryan. The foster family indicated a desire to adopt Roman if W.C.'s parental rights were terminated. The trial court was entitled to find that this factor weighed in favor of terminating W.C.'s parental rights to Roman.

With regard to the stability of the home or proposed placement, the record reflects that W.C. had an extensive criminal history and was incarcerated at the time of the termination hearing. Prior to W.C.'s latest incarceration, W.C. was living in a motel with his sister, who had a history of methamphetamine use and had recently been released from drug treatment. McDonald testified that W.C. had not shown an ability to provide a stable home for Roman. The trial court was entitled to find that this factor weighed in favor of terminating W.C.'s parental rights to Roman.

## D.  BEST-INTEREST CONCLUSION

Viewing all the evidence with the appropriate deference to the fact-finder, we hold that the trial court could have reasonably formed a firm conviction or belief that termination of W.C.'s parental rights was in Roman's best interest, and we therefore hold that the evidence is factually sufficient to support the trial court's best-interest finding.  *See C.H.*, 89 S.W.3d at 28.

We overrule W.C.'s second point.

## IV.  R.D.'S APPEAL

R.D. appeals the trial court's final order terminating his parental rights to Ryan. *See* Tex. Fam. Code Ann. § 161.001(b).  The trial court found by clear and convincing evidence that R.D.'s conduct satisfied the termination grounds listed in Family Code Section 161.001(b)(1)(D), (E), (N), (O), and (Q) and alleged in the petition for termination.  *See id.* § 161.001(b)(1)(D), (E), (N), (O), (Q).  The trial court further found by clear and convincing evidence that termination of R.D.'s parental rights was in Ryan's best interest.  *See id.* § 161.001(b)(2).  Accordingly, the trial court ordered the termination of R.D.'s parental rights to Ryan and named the Department as Ryan's permanent managing conservator.

On September 9, 2019, R.D.'s appointed appellate counsel filed a brief and corresponding motion to withdraw, stating that she has conducted a professional evaluation of the record and has concluded that there are no arguable grounds to be advanced to support an appeal of the trial court's termination order and that the

appeal is frivolous. Counsel's brief presents the required professional evaluation of the record demonstrating why there are no reversible grounds on appeal and referencing any grounds that might arguably support the appeal. *See Anders*, 386 U.S. at 744; *see also In re K.M.*, 98 S.W.3d 774, 776–77 (Tex. App.—Fort Worth 2003, order) (holding *Anders* procedures apply in parental-termination cases), *disp. on merits*, No. 2-01-349-CV, 2003 WL 2006583, at *2 (Tex. App.—Fort Worth May 1, 2003, no pet.) (mem. op.). Further, counsel informed R.D. of his right to request the record and to file a pro se response. *See Kelly v. State*, 436 S.W.3d 313, 318–20 (Tex. Crim. App. 2014). In addition, this court informed R.D. of these rights and gave him the opportunity to notify this court of his intent to respond. R.D. has not filed a response. The Department has notified this court that it agrees with R.D.'s counsel that there are no grounds assailing the trial court's termination order.

In reviewing a brief that asserts an appeal is frivolous and that fulfills the requirements of *Anders*, this court is obligated to undertake an independent examination of the record to determine if any arguable grounds for appeal exist. *See In re C.J.*, 501 S.W.3d 254, 255 (Tex. App.—Fort Worth 2016, pets. denied) (citing *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991)). Having carefully reviewed the record and the *Anders* briefs, we conclude there are no arguable grounds for reversal; thus, we agree with counsel that R.D.'s appeal is without merit. *See In re D.D.*, 279 S.W.3d 849, 850 (Tex. App.—Dallas 2009, pet. denied). We affirm the trial court's termination order. *See* Tex. R. App. P. 43.2(a).

16

We deny counsel's motion to withdraw in light of the supreme court's decision in *In re P.M.* because counsel has not shown "good cause" other than her determination that an appeal would be frivolous. *See* 520 S.W.3d 24, 27 (Tex. 2016) ("[A]n *Anders* motion to withdraw brought in the court of appeals, in the absence of additional grounds for withdrawal, may be premature."); *In re A.M.*, 495 S.W.3d 573, 582–83 & n.2 (Tex. App.—Houston [1st Dist.] 2016, pets. denied) (noting that since *P.M.* was handed down, "most courts of appeals affirming parental termination orders after receiving *Anders* briefs have denied the attorney's motion to withdraw"). The supreme court has held that in cases such as this, "appointed counsel's obligations [in the supreme court] can be satisfied by filing a petition for review that satisfies the standards for an *Anders* brief." *P.M.*, 520 S.W.3d at 27–28.

## V. CONCLUSION

Having overruled W.C.'s two points and having agreed with R.D.'s counsel that R.D.'s appeal is frivolous, we affirm the trial court's termination order.

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: December 12, 2019

17